NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONNA KOEPPEL, individually, and as a parent of GRACE LABRUNO, a minor,<br><br>                Plaintiff,<br><br>v.<br><br>ANDREW BASSETT, individually and in his capacity as an Officer of the Township of Nutley Police Department, ERIC STABINSKI, individually and in his capacity as an officer of the Township of Nutley Police Department, and TOWNSHIP OF NUTLEY<br><br>                Defendants. | Civil Action No.: 08-4543 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge,

This matter comes before the Court on Defendant Township of Nutley's Motion for Summary Judgment. The Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.    BACKGROUND**

On the morning of January 3, 2008, Plaintiff Donna Koeppel ("Plaintiff" or "Koeppel") heard hammering outside her house and observed individuals she did not know, allegedly trespassing on her property (which was fenced in), and removing bricks from her property. Def. State. of Facts ¶ 2. The individuals were installing curbing for Ms. Koeppel's neighbor, Ms. Mandato. Ms Koeppel reported the matter to the Nutley Police Department. Id. ¶ 4.

After Ms. Koeppel called the Nutley Police, she said two officers arrived on the scene: Officers Stabinski and Bassett. Officer Bassett testified that Officer Stabinski was already on the scene at the time of his arrival. Id. ¶ 39. Officer Bassett claims when he arrived at the scene, he saw a construction crew working on the borderline of Ms. Koeppel's and Ms. Mandato's, properties. Id. ¶ 34. Ms. Koeppel advised Officer Stabinski that the crew was removing or installing some sort of crumbling on her property. Id. ¶ 35. Officer Stabinski asked Officer Bassett to speak with Ms. Koeppel while he spoke to Ms. Mandata. Ms. Mandato told Officer Stabinski that she had had a survey done and that Ms. Koeppel had built a fence on part of her property. Id. ¶ 36. Ms. Koeppel explained the disagreement to Officer Basset as "a neighbor putting paving blocks on the property line and she believed the blocks were being installed on her property." Id. ¶ 42. After learning of the dispute, Officer Bassett testified that he called headquarters and headquarters dispatched Code Enforcement. Id. ¶ 43  Ms. Koeppel claims that she herself called Code Enforcement after calling the Nutley Police. Id. ¶ 4.

Carl Thunnel, a member of Code Enforcement, arrived five or ten minutes thereafter. Id. ¶ 45. Mr. Thunnell measured everything and reviewed a blueprint produced by Ms. Koeppel. Id. ¶ 8. The bricks were about five inches onto Ms. Koeppel's property. Id. ¶ 48.

At one point, according to Plaintiff, Ms. Mandato began screaming at her that the property was in fact hers. Id. ¶ 9. Officer Bassett testified that Plaintiff was irate; she would not stop yelling and acting out. Id. ¶ 49. The Officers instructed her to stop yelling, at which point Officer Bassett testified that Ms. Koeppel responded by saying "you don't tell me what to do" and then lunged her body into him. Id. ¶¶ 50-51. At one point, Officer Stabinski took a few steps back causing him to stumble over the bricks. Id. ¶ 52. He claims this is because Plaintiff

2

lunged her body into him.  Id.  Plaintiff claims that Officer Stabinski grabbed her arm, which was in a sling, and she testified that she pulled it away because of pain.  Id. ¶ 10.  Her reaction caused Officer Stabinski to step backward and stumble over the bricks.  Id. ¶ 11.  According to Plaintiff, Officer Bassett then came up and told Plaintiff that she was under arrest for assaulting an officer.  Id. ¶ 13.  Ms. Koeppel testified that she was not given a further chance to explain herself.  Id. ¶ 15.

She alleges that Officer Bassett then handcuffed Ms. Koeppel's right hand, which was holding a cane, and kicked the cane out from under her and broke.  Id. ¶¶ 16-17.  Ms. Koeppel further testified that Officer Bassett then flung the cane into the street and subsequently knocked Plaintiff down.  Id. ¶ 18.  She claims the Officer climbed on top of her and tried to grab her other arm out of its sling in order to handcuff her.  Id. ¶ 19.  It was at this time that Plaintiff claims Officer Bassett dug his knee into Plaintiff's back causing a shock in her spine and for her to urinate herself.  Id. ¶ 20.  According to Plaintiff, Officer Bassett then dragged her across the lawn using the one handcuff attached to her right arm.  Id. ¶ 21.

Officer Bassett concedes that he handcuffed Ms. Koeppel's right arm, but says he did not handcuff her left arm because it was in a sling.  Id. ¶ 54.  He testified that at this point Plaintiff became further irate, ducking her body and moving around.  Id. ¶ 55.  Officer Stabinski testified that he did not know whether Ms. Koeppel had a cane at this point or at any point during the incident.  Id. ¶ 56.  He also testified that Ms. Koeppel was never on the ground.  Id. ¶ 57.

Officer Bassett told Ms. Koeppel she was going to Newark.  Id. ¶ 22.  Ms. Koeppel was placed inside the police vehicle where she was given permission to call her husband.  Id. ¶ 23.  It was at this point that the Officers learned that Ms. Koeppel had urinated herself.  Id. ¶ 58.

3

Plaintiff was then allowed to go inside and change her clothes.  Id. ¶ 25.  She was also permitted to give medication to her child and arrange for another neighbor, Luann Ferraco, to watch her child until Ms. Koeppel's husband arrived at home.  Id. ¶¶ 27, 61.  According to Officer Bassett, Plaintiff never indicated that she was in any pain.  Id. ¶ 63.  When he inquired as to her sling and knee brace, she told him that she had tripped over a dog a few days prior.  Id. ¶¶ 64-65.

Ms. Koeppel was then placed in the backseat of Officer Bassett's vehicle and taken to Newark.  Id. ¶ 29.  Upon arrival at the station, Ms. Koeppel was placed in a cell, given a chair and informed she was being charged with aggravated assault.  Id. ¶ 30.  She was later fingerprinted and had her mugshot taken.  Id. ¶ 31.  Afterward, the Officers took Ms. Koeppel back to her home.  Id. ¶ 32.

Ms. Koeppel commenced the instant action in this Court on September 11, 2008.  Pl. Brief at 2.  It is unclear from Plaintiff's Complaint whether she brings § 1983 claims against the Township, but Plaintiff's Brief in Opposition to the instant motion (CM/ECF No. 81) appears to clarify her claims.  Id.  Plaintiff asserts nine counts; some as to all Defendants, others only as to Officers Bassett and Stabinski.  Id.  These counts are as follows: Counts 1) and 2) allege § 1983 violations for false arrest and police brutality against Defendant Officers only; Count 3) alleges a common law claim for false arrest against all Defendants; Count 4) alleges assault and battery against all Defendants; Count 5) alleges intentional infliction of emotional distress against all Defendants; Count 6) alleges intentional infliction of emotional distress on behalf of her minor daughter, Grace LaBruno against all Defendants; Count 7) alleges negligence against all Defendants; Count 8) alleges negligent infliction of emotional distress against all Defendants; and Count 9) alleges negligent infliction of emotional distress on behalf of her minor daughter,

4

Grace LaBruno, against all Defendants.

## II. LEGAL STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party. To present evidence that a genuine issue of material fact compels a trial. Id. at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact and may not simply rely on unsupported assertions, bare allegations, or speculation. See Ridgewood Bd. of Educ. v. N.E. ex. rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). Also, the Court must consider all facts presented and the reasonable inference drawn in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbit, 63 F.3d 231, 236 (3d Cir. 1995).

## III. ANALYSIS

Defendant Township of Nutley brings the instant Motion for Summary Judgment as to all claims against it. Def. Mot. Summ. J. (CM/ECF No. 74.) According to Plaintiff's Opposition Brief, Plaintiff does not allege § 1983 violations by the Township. Ms. Koeppel's remaining causes of action are all common law torts subject to the New Jersey Tort Claims Act ( "TCA"). N.J.S.A. § 59:9-2(d). The TCA supersedes all prior common law causes of action. Tower Marine, Inc. v. New Brunswick, 175 N.J. Super. 526 (Ch. Div. 1980).

Except as otherwise provided in the TCA, a public entity is liable for injury proximately

caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual. N.J.S.A. §59:2-2(a). However, "any liability of a public entity established by [the TCA] is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person." N.J.S.A. §59:2-2(b).

    A.    Counts IV, V, and VI - Intentional Tort Claims

Under the TCA, a public entity will not be liable for the acts of omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct. N.J.S.A. § 59:2-10. "Willful misconduct" has been defined as falling somewhere between simple negligence and the intentional infliction of harm. Alston v. City of Camden, 168 N.J. 170 (2001).

In Ward v. Barnes, this Court determined that there was no basis for permitting *respondeat superior* liability against public entities based on acts by public employees that require "actual malicious or willful conduct." 545 F. Supp. 2d 400, 420-21 (D.N.J. 2008). Rather, in Ward the Court granted summary judgment as to Plaintiff's claims of battery and intentional infliction of emotional distress because there was no basis of liability against the public entity defendant.

Thus, it is clear that the TCA precludes entity liability for the intentional torts allegedly committed by Defendant Officers, as public employees of Defendant public entity, Township of Nutley. Accordingly, Defendant Township of Nutley's motion for summary judgment as to Counts Four, Five and Six is granted.

### B. Counts III, VII, VIII, IX - Negligence and False Arrest Claims

As stated, except as otherwise provided in the TCA, a public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual. N.J.S.A. §59:2-2(a). Notwithstanding § 59:2-10's proscription against entity liability for intentional torts, a public entity may be liable for its employees' negligence if those acts are committed within the scope of employment. See Foster v. Newark Housing Authority, 389 N.J. Super. 60, 68 (N.J. App. Div. 2006). Indeed, a public entity can only be liable for an injury resulting from the negligent act or omission of a public employee only where the employee is also liable. See N.J.S.A. § 59:2-2(b)

As to Count III, false arrest, the TCA only prohibits an action against a municipality when its municipality officer falsely arrests someone and the officer was acting outside the scope of his employment or with willful misconduct. This Court has already prohibited Plaintiff from bringing claims for actions requiring, *inter alia*, willful misconduct. There is also no allegation that Officers Bassett and Stabinski were acting outside the scope of their employment. Therefore, the Court turns to whether Plaintiff may bring a claim for false arrest under the instant circumstances.

Because these torts do not require that the officer had any particular state of mind, there is no *per se* ban on this action against the municipality. To plead false arrest, "the essential thing is the constraint of the person." Earl v. Winne, 14 N.J. 119, 127 (1953). Therefore, if the Officers are found to have committed false arrest without willful misconduct, it is possible for the

Township to also be held liable. However, issues of fact remain as to the Officers' liability and their corresponding state of mind. Accordingly, the Court cannot rule on Township's liability as a matter of law and Defendant's motion for summary judgment as to the false arrest claim must be denied.

As to the negligence claims, Defendant Township argues that Officers Basset and Stabinski are entitled to qualified immunity, and therefore, under the TCA the Township is also not liable. Defendant alleges that pursuant to N.J.S.A. § 59:3-3(a), "a public employee is not liable if he acts in good faith in the execution and enforcement of the law." Furthermore, "negligence is insufficient to defeat the immunity provided by [this] section." Nicini v. Morra, 212 F.3d 798, 815 (3d Cir. 2000) (en banc).

Defendant is correct that the Township cannot be liable if the Officers are not liable. However, Defendant's entire argument regarding immunity is predicated on the conclusion that the Officers acted in good faith. In fact, Defendant concedes that to obtain summary judgment on good faith immunity, the public employee must establish that his conduct was "objectively reasonable" or that he behaved with "subjective good faith." Gurski v. N.J. State Police Dept., 242 N.J. Super. 148, 162 (N.J. App. Div. 1990); Alston v. City of Camden, 168 N.J. 170, 186 (2001).

In this case, Defendant Officers have not even moved for summary judgment. In fact, the Township's own pleadings concede that Plaintiff and Defendant Officers have differing versions of the events in question. Therefore the public employees in this matter, Defendant Officers, could not have possibly established that their conduct was either "objectively reasonable" or

within the ambit of "subjective good faith" as the extent of their conduct has not even been established. Rather, myriad issues of fact remain as regards both the Plaintiff's and the Officers' conduct on the day in question. Without establishing liability, or the absence thereof, as to the Officers the Court cannot make a liability determination as to the Township as a matter of law. Accordingly, Defendant Township of Nutley's motion for summary judgment as to the negligence claims must be denied.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment as to Counts four, five and six is granted, and Defendant's motion for summary judgment as to Counts three, seven, eight, and nine is denied. An appropriate Order accompanies this Opinion.

DATED: June 13, 2012

s/ Jose L. Linares<br>
JOSE L. LINARES<br>
U.S. DISTRICT JUDGE